```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Sandra Jean Flinn,              :

    Plaintiff,              :

  v.                            :     Case No. 2:15-cv-2666

                                       :     JUDGE ALGENON L. MARBLEY
Commissioner of Social Security,     Magistrate Judge Kemp

    Defendant.              :

## REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Sandra Jean Flinn, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits, disabled widow's benefits, and supplemental security income. Those applications were filed on January 11, 2012, and alleged that Plaintiff became disabled on May 1, 2008.

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on November 26, 2013. In a decision dated February 18, 2014, the ALJ issued a decision denying benefits. That became the Commissioner's final decision on June 2, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on October 5, 2015. Plaintiff filed a statement of specific errors on November 9, 2015, to which the Commissioner responded on February 9, 2016. Plaintiff filed a reply brief on March 3, 2016, and the case is now ready to decide.

### II. The Lay Testimony at the Administrative Hearings

Plaintiff, who was 59 years old as of the date of the hearing and who is a high school graduate, testified as follows.

Her testimony appears at pages 31-42 of the administrative record.

Plaintiff testified that she last worked in 2009. She was a crew member at a McDonald's restaurant, a job which involved mostly customer service but also some food preparation. She had previously worked for a company which located housing for traveling nurses. She stopped working at McDonald's due to panic attacks, one of which was so serious that she called an ambulance. Since then, they have improved somewhat due to medication, but she was still having major panic attacks four times per week. When that occurred, she took Xanax and would calm down in about 45 minutes. The attacks affected her memory and concentration. Being in large crowds could bring on an attack.

Another problem Plaintiff experienced was difficulty sleeping. She awoke throughout the night and would suffer from low energy the next day. She took medication for that as well.

On a typical day, Plaintiff fixed herself meals, did laundry, watched television, and picked up her niece from school on occasion. She was able to drive and unload the dishwasher. She had not looked for work since 2009 because she did not think she was mentally and emotionally able to hold a job.

### III. The Medical Records

The medical records in this case are found beginning on page 331 of the administrative record. The pertinent records can be summarized as follows.

#### A. Mitral Valve Prolapse

Plaintiff has summarized the records concerning mitral valve prolapse at pages six and seven of her statement of errors. She correctly notes that the condition is reflected in multiple treatment notes, usually when Plaintiff was being seen for other conditions, and that the presence of a left atrial abnormality is

seen on electrocardiograms done in 2011 and 2012. (Tr. 304-06). None of the notes in question make any mention of Plaintiff's receiving treatment for this condition, however, or reporting any symptoms being caused by it. It appears she based her applications on anxiety disorders, and there are no opinions from state agency reviewers concerning any physical impairments, including mitral valve prolapse.

### B. Psychological Impairment

Plaintiff does not cite, in her statement of errors, to any of the treatment notes relating to her anxiety or panic disorder. They show that on one occasion she went the emergency room with a panic attack and that she was being treated for anxiety and depression. Her counselor, Ms. Rosler, completed a form showing a number of marked or extreme limitations arising from panic attacks, apparently based on the symptoms which Plaintiff self-reported. (Tr. 415-17).

Dr. Sarver saw Plaintiff on April 4, 2012, for purposes of a psychological consultative examination. At that time, she was still working part-time at McDonald's, and said her work situation was fine. She did not report any current medical problems. She said that she had friends, whom she saw "variably," and that she got along well with co-workers. Plaintiff was pleasant and cooperative during the interview although Dr. Sarver described her mood as "broodingly resentful." He noted no problems with attentional pace or persistence during the interview and her memory was functionally intact. Dr. Sarver diagnosed a depressive disorder and rated her GAF at 64. He concluded that she would have no difficulty with simple job instructions, had no problems relating to concentration, attention, persistence, and pace, and would have no difficulties relating to others in the workplace. However, he thought that her depression would "episodically attenuate her capacity to

adaptively manage normative work pressures." (Tr. 400-07).

The state agency psychologists did not find a severe impairment. Dr. Lewin, the first reviewer, found only mild restrictions in the areas activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace, and no episodes of decompensation. (Tr. 60). The other reviewer, Dr. Finnerty, reached the same conclusion. (Tr. 83-84).

## IV. The Vocational Testimony

Nicholas Fidanza was called to testify as a vocational expert at the administrative hearing. His testimony begins at page 43 of the administrative record.

Mr. Fidanza described Plaintiff's past employment as a fast food worker as a light strength unskilled job. The other job he identified was retail sales clerk, which was semi-skilled and light.

Mr. Fidanza was then asked some questions about someone with Plaintiff's background and who could work at all exertional levels. That person would occasionally be able to perform complex and detailed tasks despite limitations in social functioning, could do simple, routine, repetitive tasks on a sustained basis over a normal workday, and could interact appropriately with supervisors and occasionally with co-workers and the public. Mr. Fidanza said that someone with those restrictions could not perform Plaintiff's past relevant work, but could be employed as a hand packager, warehouse worker, or salvage laborer. If the person had extreme limitations in the ability to deal with others and with work stress, that person could not be employed.

## V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 9-19 of the administrative record. The important findings in that

decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2013, and that she had not engaged in substantial gainful activity since her alleged onset date of May 1, 2008.  The ALJ also found that she met the non-disability requirements for disabled widow's benefits and that the prescribed period ended on May 31, 2011.  Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including mood disorder and anxiety disorder.  The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels but with limitations. Those included the ability to perform complex and detailed tasks occasionally despite limitations in concentration, persistence, and pace, and to perform simple, routine, competitive, repetitive tasks on a sustained basis over a normal 8-hour workday and interact appropriately with supervisors and occasionally with coworkers and the general public.

With these restrictions, the ALJ concluded that although Plaintiff could not perform her past relevant work, she could perform the jobs identified by the vocational expert, including hand packager, warehouse worker, and salvage laborer, all medium unskilled jobs.  The ALJ further found that these jobs existed in significant numbers in the state and the national economy. Consequently, the ALJ determined that Plaintiff was not entitled to benefits.

      VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred by failing to address the issue of whether Plaintiff's mitral valve prolapse was either a severe or a non-severe impairment; and (2) the ALJ erred by failing to include limitations in his residual functional capacity finding to account for all of the severe impairments which he found to exist. These issues are evaluated under the following legal standard.

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

A.  <u>Mitral Valve Prolapse</u>

Plaintiff first asserts that the ALJ did not properly evaluate her mitral valve prolapse.  She points out that applicable regulations and rulings require an ALJ to consider all of the evidence in the record, and argues that the failure to make any finding as to the severity of Plaintiff's mitral valve prolapse may well have affected the ALJ's conclusion that Plaintiff was capable of performing the medium exertional jobs identified by the vocational expert.  The Commissioner does not dispute that there is a duty to consider all of the evidence, but asserts that it was reasonable for the ALJ not to discuss mitral valve prolapse when Plaintiff never argued that it was a severe impairment or that it contributed to her alleged disability, and where there is not a single piece of medical evidence suggesting that it caused any restrictions in Plaintiff's ability to perform work-related activities.

There are a number of reasons why Plaintiff's argument on this issue is not well-taken.  First and foremost, Plaintiff has not pointed to any case or regulation which would require an ALJ to make a specific finding of severity or non-severity for every medical condition that happens to be mentioned in the medical records.  Coupled with that is the fact that, even if the ALJ had done so, there is no question that he would have found Plaintiff's mitral valve prolapse to be a non-severe impairment, since nothing in the record would support a finding that it caused any restriction in Plaintiff's ability to perform the physical demands of work at any exertional level.  Even it that were not so, there is no evidence that it would have limited her to light or sedentary exertion, so any failure on the ALJ's part is clearly harmless error - that is, it would not have changed the outcome of the case.  Plaintiff presents no contrary argument, apparently conceding that the existing record does not

show any functional limitations arising out of this condition.

This Court has also held that the failure to allege a particular type of impairment at any point in the administrative process constitutes a waiver of any argument that the ALJ erred by failing to discuss such an impairment.  For example, in <u>Riley v. Comm'r of Social Security</u>, 2013 WL 3467212, *6 (S.D. Ohio July 10, 2013), <u>adopted and affirmed</u> 2013 WL 4776736 (S.D. Ohio, Sept. 6, 2013), the Court, considering a case in which the plaintiff "did not allege any kind of mental impairment in her application, symptoms report, testimony, or anywhere else," and relying on the Court of Appeals' decision in <u>Little v. Apfel</u>, 2000 WL 658990 (6th Cir. May 10, 2000), concluded that any argument about mental impairments was waived.  That is likely the case here as well, although the absence of any evidence that Plaintiff's mitral valve prolapse caused any functional impairment - including the absence of any report by Plaintiff of symptoms arising from that diagnosis and any treatment for the condition - amply supports the conclusion that the ALJ did not commit reversible error by failing to discuss this impairment in his decision.

                B.   <u>Residual Functional Capacity Finding</u>

Plaintiff's other argument focuses on a perceived inconsistency in the ALJ's decision about her residual functional capacity from a psychological standpoint.  She notes that, at step three of the sequential evaluation process (at which the ALJ determines if any impairments meet or equal the criteria set forth in the Listing of Impairments), the ALJ found that "with regard to concentration, persistence or pace, the claimant has ***moderate difficulties***."  (Tr. 13).  It appears that the ALJ drew this conclusion from Dr. Sarver's evaluation, although that is not the conclusion which Dr. Sarver reached.  At step four, however, when the ALJ determined Plaintiff's mental residual functional capacity, he did not include any pace-based or

concentration-based restrictions. This, argues Plaintiff, is inconsistent with the Court of Appeals' decision in <u>Ealy v. Comm'r of Social Security</u>, 594 F.3d 504 (6th Cir. 2010) and several decisions from this Court interpreting <u>Ealy</u>, all of which hold that deficiencies in concentration, persistence, and pace are not necessarily accounted for by limiting a claimant to the performance of simple, repetitive tasks.

Plaintiff's argument is directly refuted by prior rulings of this Court. For example, the Court said this in <u>Dotson v. Comm'r of Social Security</u>, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014), <u>adopted and affirmed</u> 2015 WL 1006087 (S.D. Ohio March 6, 2015):

> The primary problem with that argument is that this case differs significantly from <u>Ealy</u> in term of the evidence which was before the ALJ and the findings which were made. In <u>Ealy</u>, the opinion evidence accepted by the ALJ was a residual functional capacity made by two sources which addressed twenty separate mental functional abilities; the sources found the claimant moderately limited in eight of them, two of which suggested limitations in maintaining attention and concentration for extended periods and in performing at a consistent pace. Here, by contrast, the finding to which Plaintiff points came not from a residual functional capacity evaluation but from the state agency reviewer's assessment of the "B" criteria, which compare the severity of a claimant's mental limitations to the Listing of Impairments. That assessment is not, as the ALJ specifically pointed out (Tr. 43), a residual functional capacity assessment. <u>See Sutherlin v. Comm'r of Social Security</u>, 2011 WL 500212, *1 (E.D. Mich. Feb.8, 2011)("the limitations noted in the B criteria at the second and third steps differ from a residual functional capacity assessment, in that the latter requires a detailed assessment of a variety of functions that fall within each of the four broad categories listed in the B criteria"). When an ALJ specifically differentiates between the two findings and does not incorporate those limitations into his residual functional capacity determination, <u>Ealy</u> is inapplicable. <u>See Williams v. Comm'r of Social Security</u>, 2014 WL 63919, *25 (E.D. Tenn. Jan.8, 2014) ("As for Plaintiff's argument with respect to <u>Ealy</u>, the ALJ did not determine Plaintiff had moderate

-9-

>   limitations in concentration, persistence and pace in
>   fashioning his RFC, and the proposition that simple,
>   routine, repetitive tasks does not account for such
>   limitations does not apply").

The ALJ here specifically noted that his step three findings did not constitute a residual functional capacity finding. The opinion he relied on most heavily, Dr. Sarver's, did not include any limitations on concentration, persistence, and pace. The state agency reviewers did not find even moderate difficulties in those areas. Plaintiff has not argued that the ALJ's residual functional capacity finding is not supported by substantial evidence. As this Court held in Frazier v. Comm'r of Social Security, 2015 WL 4205210, *5 (S.D. Ohio July 10, 2015), adopted and affirmed 2015 WL 5145557 (S.D. Ohio Sept. 1, 2015), "the key question is not whether an ALJ found difficulties in concentration, persistence, and pace at step three, but whether the RFC determination has substantial support in the record." It does. Therefore, the ALJ's decision on this issue must be affirmed as well.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in favor of the Defendant Commissioner.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify,

in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge
